UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| RX PROS, INC. | CIVIL ACTION NO. 16-0061 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CVS HEALTH CORP. ET AL. | MAG. JUDGE JOSEPH PEREZ-MONTES |

RULING

This is a breach of contract case. Plaintiff Rx Pros, Inc. d/b/a Sterlington Village Pharmacy ("Sterlington") has sued Defendants CVS Health Corporation, Caremark, L.L.C., and Caremark PCS Health, L.L.C. ("Caremark") for the allegedly wrongful termination of Sterlington from its retail pharmacy network.

At issue is a "Motion to Compel Arbitration and Dissolve Temporary Restraining Order" [Doc. No. 8] that Caremark filed. Also at issue is Sterlington's "Cross Motion to Hold Defendants in Contempt and for Sanctions." [Doc. No. 14]. For the following reasons, the Court GRANTS Caremark's motion and orders Sterlington to submit its cross motion to arbitration.

**I.  FACTS AND PROCEDURAL HISTORY**

For purposes of this motion, the relevant facts are as follows:

Caremark is a pharmacy benefits manager ("PBM").[1] In order to administer the benefits of its health plan clients, Caremark maintains networks of retail pharmacies at which members can have prescriptions filled. The relationship between Caremark and its retail pharmacies is governed by a

---

[1] The parties refer to the Defendants differently in their briefs. Sterlington refers to Defendants as "CVS." Defendants' briefing refers to "Caremark." For purposes of this Ruling, Defendants will be referred to as "Caremark."

provider agreement which, in turn, incorporates the provisions of a provider manual issued and routinely updated by Caremark through an agreed-upon amendment process.

Caremark issued the relevant provider manual in this case on January 1, 2016. It contains a robust arbitration provision that mandates that all disputes must be resolved in arbitration before the American Arbitration Association ("AAA"). The arbitration provision also references AAA procedures for emergency injunctive relief that a party can employ to stop the breach of the provider agreement, but it does not explicitly prohibit an aggrieved party from seeking injunctive relief in state or federal court.

In a 2014 audit, Caremark allegedly discovered that Sterlington did not collect co-pays for prescription drug sales. According to Caremark, this violated the relevant provider agreement. After the audit, Caremark referred Sterlington to Caremark's Pharmacy Membership Review Committee ("PMRC"). The PMRC decided that Sterlington should be terminated from the network with the option to seek reinstatement after two years.

On January 4, 2016, Caremark sent Sterlington a letter, notifying it of the termination decision. The letter stated that the termination would become effective on January 14, 2016.

On January 14, 2016, Sterlington filed a Petition for a Temporary Restraining Order and Preliminary Injunctive Relief in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana ("state court") alleging that Caremark's decision to terminate it amounted to a breach of contract. Sterlington sought a temporary restraining order ("TRO") preventing Caremark from terminating its contract with Sterlington and/or excluding Sterlington from Caremark pharmacy networks. The state court granted the TRO and prohibited and enjoined Caremark from "terminating its contract with [Sterlington]" and from "excluding [Sterlington] from [Caremark] pharmacy

networks..." [Doc. No. 8, Exh. 8].

That same day, shortly after the TRO was issued, Caremark removed the case to this Court. [Doc. No. 1]. Under 28 U.S.C.A. § 1450, the TRO remained in effect upon removal. On January 16, 2016, Caremark filed a motion to dissolve the TRO and compel arbitration. [Doc. No. 8]. According to Caremark, the state court never had the authority to issue the TRO because the 2016 Provider Manual mandated that emergency injunctive relief be sought and procured through an arbitration process. In the alternative, Caremark argued the TRO was invalid because it was not in compliance with Louisiana law and/or Federal Rule of Civil Procedure 65. Sterlington filed a response arguing that this Court should immediately compel arbitration without deciding whether to dissolve the TRO. [Doc. No. 15]. Alternatively, Sterlington maintained that the governing arbitration provision allowed an aggrieved party to seek a TRO in federal or state court. On January 21, 2016, Caremark filed a reply brief reiterating its arguments. [Doc. No. 23].

**II.    LAW AND ANALYSIS**

Both parties agree that the arbitration provision governs the underlying breach of contract dispute. The two narrow issues before the Court deal with the outstanding TRO. First, this Court must determine whether the state court had the authority to issue a TRO in this matter. If not, the question is whether this Court has the authority to dissolve the TRO before compelling arbitration.

**A.    The Validity of the TRO**

Initially, the parties dispute whether the state court had the authority to enter the TRO in the first place. Caremark argues that the 2016 Provider Manual's arbitration provision calls for emergency injunctive relief to be sought only through the AAA's procedures for emergency relief. Sterlington responds that it had the right to seek a TRO in state court because the arbitration

provision, while referencing AAA procedures for obtaining a preliminary injunction, never states that aggrieved parties cannot obtain emergency relief in court.[2] The Court does not need to resolve this dispute because the issue of arbitrability, in this case, is for the arbitrator to decide. The state court should never have issued the TRO.

Generally, when dealing with questions of arbitration, the court's involvement is limited to two inquiries. First, courts ask whether a valid arbitration agreement exists. *See Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002) (citing *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001)). Second, courts ask whether the instant dispute is subject to arbitration under the agreement. *Id.* Usually, the question of whether a dispute is arbitrable under the terms of a valid arbitration agreement is for the court to decide. *See Crawford*

---

[2]The relevant portion of the arbitration provision dealing with injunctive relief reads:

> Prior to a party initiating arbitration, such party shall request in writing to the other party ("Dispute Notice") a meeting of authorized representatives of the parties for the purpose of resolving the dispute. The parties agree that, within ten (10) days after issuance of the Dispute Notice, each party shall designate a representative to participate in dispute resolution discussions which will be held at a mutually acceptable time and place (or by telephone) for the purpose of resolving the dispute. Each party agrees to negotiate in good faith to resolve the dispute in a mutually acceptable manner. If despite the good faith efforts of the parties, the authorized representatives of the parties are unable to resolve the dispute within thirty (30) days after the issuance of the Dispute notice, or if the parties fail to meet within such thirty (30) days, either party may, by written notice to the other party, submit the dispute to binding arbitration. **The above notwithstanding, nothing in this provision shall prevent either party from utilizing the AAA's procedures for emergency relief to seek preliminary injunctive relief to halt or prevent a breach of this Provider Agreement**.

[Doc. No. 8, Exh. 5] (emphasis added).

Further, the arbitration provision provides that: "the arbitrators(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of the agreement to arbitrate..." *Id.*

4

*Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014). "However, if the parties have clearly and unmistakably agreed to arbitrate arbitrability, certain threshold questions–such as whether a particular claim is subject to arbitration–are for the arbitrator, and not a court, to decide. *Id.* Fifth Circuit precedent mandates that an arbitrator, not the court, must decide arbitrability if two factors are met: (1) the parties "clearly and unmistakably" intend to delegate this power to the arbitrator, and (2) the assertion of arbitrability is not wholly groundless. *Grasso Enterprises, LLC v. CVS Health Corp.*, No. SA-15-CV-427-XR, 2015 WL 6550548 at *8 (W.D. Tex. Oct. 28, 2015) (citing *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014).

In this case, both parties agree that a valid and enforceable arbitration agreement exists. The dispute that the state court faced in the first instance was whether or not a petition for a TRO and preliminary injunctive relief had to be arbitrated or whether a disgruntled party could seek that relief in court.

Under the clear language of the 2016 Provider Manual, this question was for the arbitrator to decide. *See Crawford*, 748 F.3d at 262-63. In *Crawford*, the court held that express incorporation of the rules of the arbitration service constitutes clear and unmistakable evidence that the parties have agreed to arbitrate arbitrability. *Id*. Then, the court noted that the arbitration clause in the 2014 Provider Manual incorporated the rules of the AAA. According to the Fifth Circuit, incorporation of those rules constituted "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *Id*.

The 2016 Provider Manual contains the same express incorporation of the rules of the arbitration service that the Fifth Circuit held constitutes "clear and unmistakable evidence" that the

parties agreed to arbitrate arbitrability.[3] Therefore, when faced with the Petition for a TRO, the state court should have referred the matter to arbitration. *See Grasso*, 2015 WL 6550548 at *12 (construing 2014 Provider Manual and finding that arbitrator should determine whether exception allowing party to file for injunctive relief in federal or state court applied).

Finally, Caremark's argument that the request for the TRO was arbitrable in the first instance is not "wholly groundless." On the contrary, it finds support in the arbitration provision's plain language–the arbitration provision clearly references the AAA procedures for obtaining injunctive relief. Accordingly, the state court improperly granted the TRO.

      B.      **Whether this Court can Dissolve the TRO before Compelling Arbitration.**

The next question is whether this Court has the jurisdiction to dissolve the improperly-issued TRO. Sterlington argues that this Court lacks jurisdiction to dissolve the state court TRO because the parties have agreed to arbitration. On the other hand, Caremark claims that this Court has the jurisdiction to dissolve the TRO before compelling arbitration. The Court agrees with Caremark.

Where a court lacks subject matter jurisdiction and has nonetheless entered an order, the proper solution is to vacate the original order.[4] *See King v. La. Citizen's Fair Plan Ins. Co.*, No. 07-77675, 2008 WL 3876258 at *1 (E.D. La. Aug. 18, 2008) (vacating order of dismissal where court lacked subject matter jurisdiction to enter order). Indeed, a federal district court in Michigan

---

    [3]Specifically, the arbitration provision states "Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures (available from the AAA)." [Doc. No. 8, Exh. 5].

    [4]Because Caremark removed this case to this Court, it is as if this Court issued the TRO. See *Depew v. LNV Corp.*, No. 14-284-SDD-RLB, 2014 WL 4660800, at *5 (M.D. La. Sept. 17, 2014) ("The federal court accepts the case in its current posture 'as though everything done in state court had in fact been done in federal court.'") (citations omitted).

dissolved a state-issued TRO under similar circumstances. *See Costello v. Patterson Dental Supply, Inc.*, No. 5:06-CV-213, 2007 WL 1041128, at *7 (W.D. Mich. Apr. 5, 2007). In *Costello*, the plaintiffs had brought suit in state court asking for a TRO preventing the Defendants from compelling arbitration. *Id.* The state court granted the request; then defendants removed the case to federal court and moved the court to dissolve the TRO and compel arbitration. The court, finding that the matter was subject to arbitration, first dissolved the state court TRO, then compelled arbitration. *Id.*

Accordingly, the Court will GRANT Caremark's motion and dissolve the state court TRO.

### C. Sterlington's Cross Motion for Sanctions and to hold Caremark in Contempt

Sterlington has also asked this Court to impose sanctions on Caremark and to hold it in contempt for not obeying the terms of the TRO. Caremark disputes this, arguing that it has obeyed the TRO's terms. It also asks the Court for a normal briefing schedule to respond to Sterlington's cross motion.

The Court will refer this dispute to arbitration as well. The arbitration agreement is broad and encompasses any and all disputes related to the provider agreement or provider manual, including the instant cross motion.

### III. CONCLUSION

For these reasons, Caremark's "Motion to Compel Arbitration and Dissolve Temporary Restraining Order" is GRANTED. The January 14, 2016 TRO is dissolved; Sterlington is ordered to submit all claims, including its request for contempt and sanctions, to arbitration; and all proceedings in this action are STAYED pending the resolution of arbitration.

MONROE, LOUISIANA, this 26th day of January, 2016.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE